OPINION
{¶ 1} Plaintiff, William Cokely, appeals from an order of *Page 2 
the court of common pleas granting summary judgment for Defendants, Al Smith, John Church, and The Enterprise Roofing and Sheet Metal Company of Dayton ("Enterprise"), on Cokely's claim alleging intentional infliction of emotional distress.
 {¶ 2} Cokely was hired by Enterprise in February of 2001 to work as a roofer. During his employment with Enterprise, Cokely was exposed to inappropriate conduct by some of his co-workers. For example, on one occasion, Smith threw a pair of jeans to Cokely that were covered in excrement from when some of the co-workers were using the pants as toilet paper. (Cokely Depo., p. 47-49.) Smith also made sexual statements to Cokely and called Cokely "blow job." (Id. at 46-47.) The most serious incident occurred when Smith pulled down his pants, "mooned" Cokely, stuck his fingers in his anus, and grabbed Cokely's face with his soiled fingers. (Id. at 17-18, 22-23, 96-99.)
 {¶ 3} Cokely complained to his supervisor after the mooning incident. Though his complaint was at first ignored, Cokely was subsequently transferred to a different Enterprise work crew. (Id. at 90.) According to Cokely and his girlfriend, Cokely suffered from mood swings and depression after the mooning incident. Cokely did not seek counseling, medical attention, or professional support for his emotional *Page 3 
injury. (Id. at 81.)
 {¶ 4} About three months after the mooning incident occurred, Cokely was laid off from Enterprise for lack of work. He began working for Baker Concrete the day after he was laid off by Enterprise. Eventually, Cokely was laid off by Baker Concrete as well.
 {¶ 5} On April 29, 2004, Cokely commenced an action in common pleas court against Defendants on a claim for intentional infliction of emotional distress. According to Cokely, the lewd, abusive, and extremely offensive conduct of his co-workers caused him severe emotional anxiety, stress, and humiliation.
 {¶ 6} Defendants removed the action to federal court, but the federal court remanded the action to the common pleas court. Defendants moved for summary judgment, which Cokely opposed. The trial court granted summary judgment on August 23, 2006. Cokely filed a timely notice of appeal.
ASSIGNMENT OF ERROR
 {¶ 7} "THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT/ APPELLEES' MOTION FOR SUMMARY JUDGMENT (DOCKET #27)."
 {¶ 8} When reviewing a trial court's grant of summary judgment, anappellate court conducts a de novo review. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. "De Novo review means thatthis court *Page 4 uses the same standard that the trial court should have used, and weexamine the evidence to determine whether as a matter of law no genuineissues exist for trial." Brewer v. Cleveland City Schools Bd. OfEdn. (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citingDupler v. Mansfield Journal Co. (1980), 64 Ohio St.2d 116, 119-20,413 N.E.2d 1187. Therefore, the trial court's decision is not granted anydeference by the reviewing appellate court. Brown v. Scioto Cty. Bd. OfCommrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.
 {¶ 9} "The appropriateness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis DayWarehousing Inc. (1978), 54 Ohio St.2d 64, 66. See also Civ. R. 56(C).
 {¶ 10} In Yeager v. Local 50, Teamsters, Chauffers, Warehousemen Helpers of America, et al (1983), 6 Ohio St.3d 369, the Supreme Court held:
 {¶ 11} "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress *Page 5 
to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (Bartow v. Smith, 149 Ohio St. 301, 78 N.E.2d 735 [37 O.O. 10], overruled.)" Id., Syllabus by the Court.
 {¶ 12} "To establish a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it could be considered as `utterly intolerable in a civilized community'; (3) that the actor's actions were the proximate cause of plaintiff's psychological injury; and (4) that the mental anguish suffered by the plaintiff was serious and of a nature that `no reasonable man could be expected to endure it.'" Buckman-Peirson v. Brannon, 159 Ohio App.3d 12, 2004-Ohio-6074, _29, citations omitted.
 {¶ 13} Only the fourth element is at issue in this appeal, because the trial court granted summary judgment for Defendants solely on a finding that Cokely failed to establish a genuine issue of material fact relating to the serious and *Page 6 
debilitating nature of his alleged emotional injury. The trial court explained:
 {¶ 14} "The evidence before the Court demonstrates that Plaintiff is moody, temperamental, depressed and could not sleep or eat at times while employed by Enterprise. However, the evidence further demonstrates that Plaintiff did not miss any work nor incur any expenses for treatment of emotional distress. Plaintiff testified that after the most serious incident occurred he continued working for Enterprise, although on a different crew, and was there everyday giving one hundred and ten percent until he was laid off for lack of work. (Cokely Depo. p. 15, 85.) The day after Plaintiff was laid off from Enterprise he began working for Baker Concrete until he was laid off again. (Cokely Depo. p. 82) Once again, Plaintiff testified that he gave Baker Concrete one hundred and ten percent everyday. (Cokely Depo. p. 85.) Plaintiff further testified that he did not seek counseling, medical attention or professional support for an emotional injury. (Cokely Depo. p. 81.) The Court finds that no reasonable trier of fact could conclude that Plaintiff was `unable to adequately cope' with a `debilitating' emotional injury." (Dkt. #27, p. 6.)
 {¶ 15} The Supreme Court has provided guidance in *Page 7 
determining whether the mental distress suffered by a plaintiff is serious:
 {¶ 16} "By the term `serious,' we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. . . .
 {¶ 17} "A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." Paugh v. Hanks (1983), 6 Ohio St.3d 72,78, 451 N.E.2d 759, citations omitted.
 {¶ 18} The determination of the seriousness of an emotional injury often involves a very fact-intensive inquiry. As the Supreme Court has cautioned, the determination of seriousness must be accomplished on a case-by-case basis, because no fixed or immutable rule is capable of resolving all the cases brought under an action for the intentional infliction of serious emotional distress. See Paugh, 6 Ohio St.3d at 80.
 {¶ 19} The trial court cited a series of cases in which *Page 8 
proof of emotional distress was held insufficient because the plaintiff returned to the workplace where the misconduct occurred and/or failed to obtain counseling or other support for his alleged distress. We agree those considerations are significant. However, in isolation, they are difficult to apply in relation to the summary judgment standard, and should not be viewed as conclusive unless, on all the facts, reasonable minds could only conclude that proof of the required degree of emotional distress is as a result precluded.
 {¶ 20} Cokely testified that as a result of his treatment at Enterprise, he could not sleep, became short-fused, and had difficulty getting along with his girlfriend, Autumn Vires, and their children. (Cokely Depo., p. 86, 99-100, 102-03.) Further, Autumn Vires stated in an affidavit (Docket #19) that Cokely has had difficulty sleeping and eating, has regularly suffered mood changes, has been preoccupied with the mooning incident, and has been depressed to the point where he no longer engages in recreational activities that he once enjoyed. Cokely stated that he has been unable to forget the mooning incident and will think about it until the day he dies. (Cokely Depo., p. 118.)
 {¶ 21} Reasonable minds could only find that Defendant *Page 9 
Smith's conduct toward Cokely was extreme and outrageous and was intended to cause emotional distress. Also, the evidence of Cokely and Autumn Vires, construed most strongly in Cokely's favor, per Civ.R. 56(C), would permit reasonable minds to find that the depression and anxiety Cokely allegedly suffers proximately resulted from Smith's conduct. However, whether those injuries rise to the level of mental anguish which no reasonable man could be expected to endure,Buckman-Pierson v. Brannon, presents a further issue.
 {¶ 22} "Anguish" has been defined as extreme pain of the body or mind that constitutes excruciating distress. Webster's Third International New Dictionary. Implicit in those conditions is a resulting inability to engage in the regular activities of daily life: work, family responsibilities, rest and recreation. Further, the degree of those debilitations must be so severe that the victim has good cause to seek professional help to overcome them.
 {¶ 23} On this record, there is evidence from which reasonable minds could find that Cokely suffers from his abuse by Smith. However, even construing that evidence most strongly in his favor, we conclude that reasonable minds could not find that Cokely suffers from the mental distress his claim for relief requires him to prove. He was not prevented *Page 10 
from engaging in productive work. He sought no professional help. He was able to meet his familial responsibilities. And, while his capacity for rest and recreation and positive family relationships has been negatively affected, the degree of debilitation Cokely suffered in those respects has been moderate, not severe.
 {¶ 24} We agree with the trial court that no genuine issue of material fact exists concerning the injuries Cokely allegedly suffered, and that those alleged injuries do not rise to the level of mental distress which his claim for relief requires. Therefore, we will overrule the error assigned and affirm the summary judgment from which the appeal was taken.
WOLFF, P.J. and GLASSER, V.J., concur.
(Hon. George M. Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1